STEVEN WEINER, APPELLANT, v. THOMAS D. BEATTY, ESQ., RESPONDENT.

No. 39605

June 9, 2005*                                              116 P.3d 829

---

[75]*See* NRS 34.830. .

*Reporter's Note: The court issued its decision in this matter on June 9, 2005. The opinion printed here is the corrected opinion issued on August 8, 2005.

*Kossack Law Offices* and *Robert J. Kossack,* Las Vegas, for Appellant.

*Laxalt & Nomura, Ltd.,* and *Bruce R. Laxalt* and *Kerry Zachariasen Malone,* Reno, for Respondent.

## OPINION[1]

By the Court, HARDESTY, J.:

In this appeal, we consider whether a public-employee union member has an independent claim for legal malpractice against an attorney provided by his union. We conclude that state labor law should be interpreted consistently with federal labor law, which bars legal malpractice claims against lawyers supplied by unions. A union member's remedy lies in an action against the union for breach of the duty of fair representation.

### FACTUAL AND PROCEDURAL HISTORY

Dr. Steven Weiner worked for the Clark County School District (CCSD) from 1973 until his termination in 1997.

In October 1996, Weiner was suspended from his employment as a principal at Robinson Middle School. Weiner was a member of the Clark County Association of School Administrators (CCASA), a recognized employee organization[2] or union for school administrators. The collective bargaining agreement between CCASA and CCSD provided that an employee under investigation was entitled to union representation. Although Weiner had the option to retain his own personal counsel, he requested assistance from CCASA in his quest for reinstatement.

CCASA hired and paid attorney Thomas D. Beatty to represent Weiner during the investigative interview and subsequent arbitration hearing. CCSD was represented in the arbitration by its general counsel C.W. Hoffman, Jr. After three days of hearings, the arbitrator concluded that CCSD had just cause to terminate Weiner.

Unbeknownst to Weiner, Beatty was simultaneously retained by CCSD to represent CCSD's assistant general counsel in a separate, federal law suit.

Weiner filed a state court action against CCASA and then against Beatty individually for malpractice. The cases were consolidated, and Beatty sought summary judgment. The district court concluded that section 301(b) of the Labor Management Relations

---

[1]This corrected opinion is issued in place of the opinion filed June 9, 2005.

[2]NRS 288.040 defines an employee organization as "an organization of any kind having as one of its purposes improvement of the terms and conditions of employment of local government employees."

(Taft-Hartley) Act[3] preempted Weiner's claim. The district court also determined that a lawyer representing a collective bargaining organization or union, who argues on behalf of an individual union member, cannot be sued by that member for malpractice. Consequently, the district court granted Beatty's summary judgment motion. Weiner then appealed.[4]

## DISCUSSION

This court reviews a district court's decision to grant summary judgment de novo.[5] Summary judgment is appropriate when, after a review of the record viewed in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[6] "In determining whether summary judgment is proper, the nonmoving party is entitled to have the evidence and all reasonable inferences accepted as true."[7]

Weiner filed a malpractice action against Beatty under state law. The district court determined that federal law preempted the state law malpractice claim because under federal law, a union member cannot sue the union attorney for malpractice.[8] Rather, the union member must sue the union itself for breach of the duty of fair representation.[9]

Federal labor law interpreting Taft-Hartley section 301(b) protects individual union members, agents and representatives from civil liability, so long as their conduct and actions are within the purview of the collective bargaining agreement.[10] In *Atkinson v.*

---

[3]29 U.S.C. § 185 (2000).

[4]Weiner and CCASA subsequently stipulated to dismiss Weiner's appeal against CCASA.

[5]*Walker v. American Bankers Ins.,* 108 Nev. 533, 536, 836 P.2d 59, 61 (1992).

[6]*Medallion Dev. v. Converse Consultants,* 113 Nev. 27, 31, 930 P.2d 115, 118 (1997).

[7]*Id.*

[8]*Peterson v. Kennedy,* 771 F.2d 1244, 1259 (9th Cir. 1985).

[9]*Id.*

[10]*See Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401 (1981) (holding union members participating in "wildcat" strike cannot be held individually liable for violating no-strike clause of collective bargaining agreement, whether or not the union participated in or authorized the illegality); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238 (1962) (barring employer from suing certain union members individually in their capacity as agents of the union for alleged involvement in a strike in violation of the collective bargaining agreement); *Hardline Elec. v. Intern. Broth. of Elec. Workers,* 680 F.2d 622 (9th Cir. 1982)

*Sinclair Refining Co.*, the United States Supreme Court held that union officers and employees are not individually liable for acts performed under the banner of collective bargaining.[11] The *Atkinson* Court emphasized specifically that the policy of holding only the union liable ''cannot be evaded or truncated by the simple device of suing union agents or members, whether in contract or tort, or both, in a separate count or in a separate action for damages.''[12]

Additionally, the vast majority of courts have determined that an attorney hired by a union to defend a union member covered under a collective bargaining agreement is an agent of the union.[13] Therefore, a state law malpractice claim will not lie.

A leading case is the Ninth Circuit Court of Appeals decision in *Peterson v. Kennedy.*[14] In *Peterson,* the court reasoned that a union provides a service to the member when it furnishes legal counsel,[15] the attorney-client relationship exists between the union and the attorney,[16] and a different standard of care governs union liability and

---

(following *Complete Auto Transit, Inc.* by stipulation of the parties); *United Steelwkrs. of America v. Lorain, Etc.,* 616 F.2d 919 (6th Cir. 1980) (holding that employer cannot maintain action against union officers and staff representatives in alleged illegal strike involving arbitrable issues); *Universal Communications Corporation v. Burns,* 449 F.2d 691 (5th Cir. 1971) (holding that television station cannot sue union official for attempting to induce political candidates to boycott station by falsely telling candidates that other stations were unionized); *Williams v. Pacific Maritime Association,* 421 F.2d 1287 (9th Cir. 1970) (holding that union members are not permitted to sue individual union officers and executive officials of defendant union); *Suwanchai v. International Broth. of Elec. Workers,* 528 F. Supp. 851 (D.N.H. 1981) (determining that union official was immune under section 301 in action against union and official for breach of duty of fair representation in failing to timely file or properly present grievance); *Balestreri v. Western Carloading,* 530 F. Supp. 825 (N.D. Cal. 1980) (holding that in ex-employee's action against union and its business agent for failure to adequately represent plaintiff regarding his discharge for fighting, union agent is immune under section 301); *Henry v. Radio Station KSAN,* 374 F. Supp. 260 (N.D. Cal. 1974) (holding that employees could not sue union business agent individually for inadequate representation in dispute with employer regarding alleged race discrimination).

[11]370 U.S. at 249.

[12]*Id.*

[13]*E.g., Peterson,* 771 F.2d at 1257-60; *Montplaisir v. Leighton,* 875 F.2d 1, 5-7 (1st Cir. 1989); *Best v. Rome,* 858 F. Supp. 271, 274 (D. Mass. 1994); *Mamorella v. Derkasch,* 716 N.Y.S.2d 211, 213 (App. Div. 2000); *Sellers v. Doe,* 650 N.E.2d 485, 487-88 (Ohio Ct. App. 1994); *Collins v. Lefkowitz,* 584 N.E.2d 64, 65 (Ohio Ct. App. 1990) (holding that an attorney who is handling a labor grievance under a collective bargaining agreement has not entered into an attorney-client relationship with the union member).

[14]771 F.2d 1244.

[15]*Id.* at 1258.

[16]*Id.*

claims for legal malpractice.[17] Therefore, the court held that both in-house and outside counsel were an arm of the union.[18] Accordingly, the court concluded that counsel were also protected by the rule set forth in *Atkinson* that union officers and employees are immune from personal liability for acts undertaken as union representatives.[19]

Weiner contends, however, that the collective bargaining agreement between CCASA and CCSD falls outside the scope of federal labor law because he was employed by a political subdivision of Nevada.

In pertinent part, federal labor statutes provide, "The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include . . . any State or political subdivision thereof."[20] For purposes of this provision, political subdivisions are " 'entities that are either . . . created directly by the state, so as to constitute departments or administrative arms of the government, or . . . administered by individuals who are responsible to public officials or to the general electorate.' "[21] Under the federal labor statutes' express terms, then, they do not govern employees of political subdivisions of the state.[22]

As the CCSD is a political subdivision of the State of Nevada,[23] the federal labor statutes do not apply directly to the CCSD or its employees. Instead, because the CCSD is a local government employer[24] and Weiner is a local government employee,[25] the Nevada Employee-Management Relations Act (EMRA)[26] governs this case.

The EMRA is silent on the issue of immunity from personal liability for union officers and employees for acts undertaken as union representatives. We note, however, that by enacting the

---

[17]*Id.* at 1259.

[18]*Id.* at 1258.

[19]*Id.*

[20]29 U.S.C. § 152(2) (2000); *id.* § 142(3).

[21]*Chaparro-Febus v. Local 1575,* 983 F.2d 325, 329 (1st Cir. 1992) (quoting *NLRB v. Natural Gas Utility District,* 402 U.S. 600, 604-05 (1971)).

[22]*N.A.A.C.P., Detroit Branch v. DPOA,* 821 F.2d 328, 331-32 (6th Cir. 1987).

[23]NRS 386.010(2) ("Each county school district created by this chapter is hereby declared to be a political subdivision of the State of Nevada whose purpose is to administer the state system of public education.").

[24]NRS 288.060 (defining "local government employer" as "any political subdivision of this State or any public or quasi-public corporation organized under the laws of this State and includes, without limitation, . . . school districts").

[25]NRS 288.050 (defining "local government employee" as "any person employed by a local government employer").

[26]NRS Chapter 288.

EMRA, the Legislature ''intended to apply principles similar to those of the NLRA to its public employers.''[27] We have held that precedent interpreting the federal statutes is persuasive in interpreting the EMRA.[28] Further, we recognized in *Cone v. Nevada Service Employees Union* that local government employee organizations are subject to the duty of fair representation.[29] And, we determined in *Rosequist v. International Ass'n of Firefighters* that ''fair representation of an employee by a union involving the implementation of the terms of a collective bargaining agreement is a right arising under the [EMRA] and the failure of a union to fairly represent an employee interferes with that right.''[30]

We take this opportunity to further address the scope of the duty of fair representation under the EMRA. We agree with federal law that the duty of fair representation governs the relationship between union members and union representatives.[31] When a collective bargaining agreement is in place, the union and its bargaining representatives owe a duty of fair representation to its members.[32] The duty of fair representation requires that when the union represents or negotiates on behalf of a union member, it must conduct itself in a manner that is not ''arbitrary, discriminatory, or in bad faith.''[33] If the union's conduct is deemed to be within the duty of fair representation, liability will not lie against the union for acts undertaken in representing a union member.[34]

In examining a union's fair representation duty, other states have embraced federal labor law, holding that when a union furnishes an employee with legal counsel, it provides a service to the member.[35] For that reason, given the union's duty of fair representation, the union is ultimately responsible to the employee for any deficiency in the performance of the legal service.[36]

---

[27]*Truckee Meadows v. Int'l Firefighters*, 109 Nev. 367, 374, 849 P.2d 343, 348 (1993).

[28]*See id.* at 375-76, 849 P.2d at 348-49.

[29]116 Nev. 473, 479, 998 P.2d 1178, 1182 (2000); *see also* NRS 288.140(1); NRS 288.270(2).

[30]118 Nev. 444, 449, 49 P.3d 651, 653 (2002).

[31]*Steelworkers v. Rawson*, 495 U.S. 362, 372 (1990).

[32]*Marquez v. Screen Actors*, 525 U.S. 33, 44 (1998).

[33]*Vaca v. Sipes*, 386 U.S. 171, 190 (1967).

[34]*Id.*

[35]*Mamorella*, 716 N.Y.S.2d at 213; *Sellers*, 650 N.E.2d at 487; *Collins*, 584 N.E.2d at 65.

[36]*Id.*

In considering the scope of the fair representation duty, a majority of courts have concluded that a rule imposing personal liability on public-employee union agents would be inconsistent with the standard of conduct required of the union.[37] Union agents should not be held to a negligence standard of care, when the union for whom they work is liable only if its representation is "arbitrary, discriminatory, or in bad faith."[38] We agree with these courts, and further, we see no reason to adopt a rule imposing malpractice liability on union lawyers representing public employees, when the same lawyer would have no liability under federal labor law representing a nonpublic-employee union member.

Accordingly, we conclude that the EMRA should be interpreted consistently with the federal labor statutes, which bar legal malpractice claims against lawyers supplied by the union.[39]

Beatty's representation of Weiner arose out of the collective bargaining agreement between CCASA and CCSD, as Beatty was appointed counsel for a grievance covered by the collective bargaining agreement. CCASA paid Beatty. Weiner accepted the service provided by his union and declined the opportunity to retain his own personal attorney. Therefore, Weiner's claim directly implicates the union's duty of fair representation under the EMRA. Under the rule in *Peterson,* Beatty is considered an arm of the union. As an arm of the union, Beatty is protected from a malpractice suit stemming from this representation, for the union is the sole source of recovery.

## CONCLUSION

We conclude that when a union provides an attorney to represent a union member in a matter related to a collective bargaining agreement, that attorney is an agent of the union. As an agent of the union, the attorney is not susceptible to a malpractice claim; rather, a claim by the union member will only lie against the union itself based on a breach of the duty of fair representation. Accordingly, we affirm the district court's order granting summary judgment in favor of respondent Beatty.

BECKER, C. J., ROSE, MAUPIN, GIBBONS, DOUGLAS and PARRAGUIRRE, JJ., concur.

---

[37]*Peterson,* 771 F.2d at 1259; *Best,* 858 F. Supp. at 275.

[38]*Vaca,* 386 U.S. at 190.

[39]By this rule, we express no opinion concerning a union attorney's ethical obligations to a grievant as that issue is not before us.