OPINION OF THE COURT
William F. O’Brien, III, J.
Plaintiff instituted this action based upon the circumstances surrounding his dismissal from employment as a custodial worker for the Fayetteville-Manlius School District. The complaint, which was later amended to reflect the proper spelling of defendant Russell McCarty’s name, states three causes of action: (1) wrongful termination from employment, (2) intentional infliction of emotional distress, and (3) breach of the duty of fair representation. Defendants presently move to dismiss the complaint for failure to state a claim. Plaintiff cross-moves to further amend his complaint to add a cause of action for violations of the Labor and Management Improper Practices Act by defendants McCarty and Carrigan and also seeks an order forbidding attorney James Bilik from representing all of the named defendants in this action due to conflicts of interest.
*320 For the reasons set forth herein, defendants’ motion to dismiss the complaint must be granted.
Factual Background
Plaintiff was initially hired by the Fayetteville-Manlius School District in November of 1984, as an entry-level custodial/maintenance worker. He was promoted in 1988 to the position of “Groundsman” on a probationary basis and was thereafter granted permanent status as a “Groundsman.” In late 1998, plaintiff was given a temporary assignment as Lead Groundskeeper, a supervisory, working foreman position which involved the supervision of a crew of two other workers, Robbie Conklin and Roger Sawyer.
As a custodial employee of the School District, plaintiff was a member of the Fayetteville-Manlius Association of Custodial Maintenance Personnel (hereinafter Local Union) and was subject to the employment terms and conditions set forth in the collective bargaining agreement between the School District and the Local Union. The Local Union became affiliated with defendant New York State United Teachers (hereinafter NYSUT) based upon its status as the exclusive bargaining representative for custodial workers in the Fayetteville-Manlius School District (hereinafter School District). Defendant NYSUT, in turn, provides services such as assistance with collective bargaining and grievance processing to affiliates in good standing. In order to facilitate the provision of such services, defendant NYSUT typically assigns to a local organization a Labor Relations Specialist, who is an employee of NYSUT, and devotes a portion of time to servicing that local union. Defendant NYSUT was not at any time a party to the collective bargaining agreement between the School District and the Local Union.
Plaintiff alleges that in March of 1999, defendant Carrigan, a fellow custodial employee of the School District who had worked with plaintiff in the past and had developed a dislike for plaintiff, learned that he had been reassigned to plaintiffs grounds crew. Plaintiff theorizes that, in order to avoid having to work under plaintiff, defendant Carrigan persuaded his personal friend and then-president of the Local Union, defendant McCarty, to present charges of misconduct to School District officials in an attempt to get plaintiff fired. These charges led to an investigation of the work site used by plaintiff and his work crew as their operating base that included clandestine video surveillance. Based upon the video surveil *321 lance and other evidence, plaintiff and crew members Conklin and Sawyer, along with a member of another crew working with plaintiffs crew for one day, were served with formal, written charges and notice of the School District’s intent to terminate their employment as of July 8, 1999.
Plaintiff and the members of his crew all filed grievances against their termination. Under the collective bargaining agreement between the Local Union and the School District, grievants first present the grievance to their immediate supervisor (Step 1), then to the School District Business Manager if Step 1 failed to resolve the dispute (Step 2), then to the Superintendent of the School District if Step 2 failed to resolve the dispute (Step 3). If Step 3 failed to resolve the dispute, the grievance would be presented to an impartial arbitrator, whose decision on the grievance would be binding. Crew members Sawyer and Conklin entered into stipulations of settlement of their grievances which included their resignation from employment. Plaintiff elected to pursue his grievance, seeking reinstatement and back pay.
Plaintiff was represented throughout the grievance process by Labor Relations Specialist Harry Slywiak, a nonlawyer employee of defendant NYSUT assigned to serve the Local Union. Plaintiff contends that throughout the grievance process he repeatedly indicated a preference for hiring a private attorney to represent him, at his own expense, as he was unhappy with the performance of representative Slywiak and, in fact, believed representative Slywiak to be working in concert with School District officials rather than in plaintiff’s best interest. Plaintiffs grievance was ultimately heard by arbitrator Dana Edward Eischen. Representative Slywiak presented plaintiffs case to arbitrator Eischen based upon the theory that the School District could not discipline plaintiff without limitation, despite the fact that a “just cause” provision had been withdrawn from the final version of the 1999 collective bargaining agreement between the School District and defendant Local Union.[1] By written decision dated March 10, 2001, arbitrator Eischen denied plaintiffs grievance, finding specifically that plaintiffs grievance did not challenge the reasonableness of the rules and regulations pursuant to which he was terminated and determining that the School District’s adamant rejection of a “just cause” provision in the collective *322 bargaining agreement during the 1999 negotiations indicated that no such protection was presently available to plaintiff.
Plaintiff also alleges that defendants Carrigan and McCarty were “rewarded” by the School District for their participation in the successful effort to oust plaintiff from his job. Plaintiff notes that shortly after he was given his notice of termination, defendant McCarty resigned as president of the Local Union to accept an appointment as the School District’s Superintendent of Buildings and Grounds. Moreover, despite the fact that he appears on the same videotape used as evidence to support plaintiff’s firing, defendant Carrigan was never subjected to disciplinary actions and, in fact, also received a subsequent promotion.
Relevant Law/Analysis
Motion to Dismiss the Complaint as Untimely
Defendants argue that the complaint must be dismissed because the action was not commenced within the time prescribed by the statute of limitations. Presuming, for the sake of argument, that defendants properly characterize the complaint as stating causes of action for breach of the duty of fair representation, the action must be commenced within four months of either the occurrence of the alleged breach or the suffering of actual harm by plaintiff, whichever is later. (CPLR 217 [2] [a].)
The earliest date upon which plaintiff’s claim can be construed to have accrued is March 10, 2001, the date of the decision of arbitrator Eischen. The present complaint was filed with the County Clerk on July 5, 2001, which was within the four-month period allowed by the statute. However, defendants contend that because the complaint was not served until October 27, 2001, it must be dismissed.
CPLR 306-b states that an action shall be dismissed without prejudice if service of the summons and complaint is not made within 120 days of filing, unless the court extends the time for service because of good cause shown or in the interest of justice. No one factor is determinative of the decision to extend the time for service. (Leader v Maroney, Ponzini & Spencer, 97 NY2d 95, 104 [2001].) Late service may be excused in the interest of justice when caused by mistake, oversight or confusion . (Id. at 105.) The court may consider “any factor relevant to the exercise of its discretion” when faced with such a question. (Id. at 106.)
*323 Here, plaintiff’s counsel details in his affirmation continued and extensive efforts undertaken to serve defendants within the statutory period. The difficulties experienced by his process server are similar to those found in Scarabaggio v Olympia & York Estates Co. (97 NY2d 95), one of the trio of cases discussed in the Leader decision. Further, defendants have not shown that they have been prejudiced in any way by the delay in service of the summons and complaint. Accordingly, defendants’ motion to dismiss the complaint as time barred is denied.
Causes of Action Pertaining to Defendant NYSUT
Regarding plaintiff’s substantive claims, it is initially important to sort out the precise nature of plaintiffs alleged causes of action. While plaintiff offers several novel theories of liability for both the individual defendants and defendant NYSUT, the essence of the complaint involves harm that occurred as a result of the fraudulent and willful actions of defendants McCarty and Carrigan, undertaken as members of defendant Local Union, and the activities of the defendant Local Union by association with NYSUT representative Slywiak in the course of the processing of plaintiffs grievance.
Plaintiff attempts to cast his claim against defendant NYSUT as one for negligence in its handling of his grievance. However, in order to sustain a negligence claim, it must first be established that the defendant owed a duty to the plaintiff. Plaintiff has failed to plead any facts indicating that the Local Union or defendant NYSUT owed any duty to him other than a duty to represent him fairly in the processing of his grievance. The Local Union’s duty to represent him in the grievance process arises from the collective bargaining agreement and the Local Union’s status as the exclusive bargaining agent. Any duty owed to plaintiff by defendant NYSUT would have resulted from NYSUT’s involvement in the processing of plaintiffs grievance.
Plaintiffs theory of liability for defendant NYSUT based upon an agency relationship fails because plaintiff, as an employee at will, had no cause of action outside the scope of the collective bargaining agreement. Since he could only challenge his termination based upon compliance with the collective bargaining agreement, any duty involving the Local Union or defendant NYSUT sprang from the collective bargaining agree *324 ment and was encompassed by the duty of fair representation.[2] (McClary v Civil Serv. Empls. Assn., 133 AD2d 522 [4th Dept 1987]; see also United Steelworkers of Am., AFL-CIO-CLC v Rawson, 495 US 362, 371 [1990].)
Having identified the complaint as a cause of action for breach of the duty of fair representation, defendants move to dismiss the complaint pursuant to CPLR 3211 (a) (1) on the basis that the documentary evidence of the collective bargaining agreements between defendant Local Union and the School District shows that defendant NYSUT was not a party to the agreements between defendant Local Union and the School District and, as such, no cause of action for breach of a duty of fair representation can lie against defendant NYSUT because it was not an exclusive bargaining agent.
Defendants’ motion based upon documentary evidence must be denied. In order to justify dismissal of a complaint based upon the mere production of documentary evidence, such evidence must resolve all factual issues as a matter of law and conclusively dispose of the plaintiffs claim. (Adamkiewicz v Lansing, 288 AD2d 531 [3d Dept 2001].) Here, although the documentary evidence does prove that defendant NYSUT is not a party to the collective bargaining agreement and is, therefore, not the exclusive bargaining agent for plaintiff, defendants have failed to establish that such facts, as a matter of law, preclude defendant NYSUT from liability to plaintiff for breach of the duty of fair representation.
The duty of fair representation is originally a common-law concept which New York State codified in 1990 by amendment to the Fair Employment Act. (Civil Service Law § 209-a [2] [c].) This duty springs from the status of a union, such as the Local Union in this case, as the exclusive agent authorized to negotiate and enforce collective bargaining agreements on behalf of its members. (See Vaca v Sipes, 386 US 171, 177 [1967].) Essentially, the duty is a recognition of the premise that union, members must be able to rely upon the good faith efforts of those who represent them in negotiating and enforcing then-labor agreements.
Defendants offer several decisions of the Public Employees Relations Board (PERB) for the proposition that defendant NYSUT cannot be held to owe a duty of fair representation to *325 individual grievants such as plaintiff because it is not the exclusive bargaining agent with plaintiff’s employer. (Matter of Sterner, 31 PERB 4601 [1998]; Matter of Feraci, 30 PERB 4661 [1997]; Matter of Lanzillo, 28 PERB 4544 [1995]; Matter of MacKenzie, 20 PERB 4590 [1987].) Further, defendants cite PERB’s Lanzillo decision as controlling precedent on the subject because the decision was affirmed on appeal by Supreme Court, Albany County. (Matter of Lanzillo, 29 PERB 7003 [1996].) However, Supreme Court made no explicit affirmation of the general principle that an affiliated agent, working on behalf of an exclusive bargaining agent, cannot be held to owe a duty of fair representation to a grievant. In fact, Supreme Court’s only discussion of that issue was to recite PERB’s holding and to state that “all determinations made by PERB * * * were neither arbitrary or capricious nor affected by error of law.”
A more thorough analysis of the subject is found in Matter of O’Brien (25 PERB 4631 [1992]). There, a PERB Administrative Law Judge (ALJ) held that “an employee organization that acts as the agent of the exclusive bargaining agent may itself be held liable for a violation of the duty of fair representation pursuant to [Civil Service Law] § 209-a.2(c).” (Matter of O’Brien, supra.) The ALJ reasoned that the plain language of the statute confers liability for breach of the duty of fair representation on the exclusive bargaining agent and any of its agents and that strong policy considerations favor the imposition of such a duty upon an entity which undertakes the actual representation of a grievant in situations such as the present one. (Id.) Most importantly, failing to recognize a duty when an affiliate undertakes representation on behalf of an. exclusive bargaining agent could lead to the untenable situation of an exclusive bargaining agent incurring liability for a breach of the duty of fair representation based upon an affiliate’s acts (or inaction) while the affiliate faces no consequences. (Id.)
Such a holding does not require that an affiliate association like defendant NYSUT provide competent representation in situations such as the present one. It merely prohibits such affiliates and their agents from engaging in the type of arbitrary, discriminatory or bad faith conduct that the duty of fair representation is designed to eliminate and provides grievants with a modicum of trust in their assigned representatives. To demand less would leave defendant NYSUT and other similar associations free to engage in such behavior with no fear of reprisal.
*326 Here, the complaint states that defendant NYSUT, through its agent representative Slywiak, represented plaintiff from start to finish and that no one from defendant Local Union played any role in processing plaintiffs grievance. Plaintiff further alleges that he repeatedly requested to retain independent counsel and was prohibited from doing so. Once defendant NYSUT, through its agent representative Slywiak, essentially placed itself in the position of the Local Union for the purpose of processing plaintiffs grievance, it assumed the same duty of fair representation to plaintiff as was borne by the Local Union. Accordingly, defendants’ motion to dismiss the complaint based upon documentary evidence must be denied because the documentary evidence alone does not entitle defendants to judgment as a matter of law.
Having determined that a cause of action for breach of the duty of fair representation may be sustained against defendant NYSUT based upon its representation of plaintiff, the question of whether the complaint pleads facts sufficient to support such a cause of action must be answered. It is noteworthy that defendants, in their notice of motion, fail to identify CPLR 3211 (a) (7) (failure to state a cause of action upon which relief may be founded) as a basis for the requested relief of dismissal of the complaint. But, since the arguments presented by defendants on the dispositive issues of this case clearly state the defense of failure to state a cause of action, that defense will also be deemed raised although not specifically pleaded.
Review of a motion to dismiss pursuant to CPLR 3211 requires the court to afford the complaint a liberal construction, accept as true the allegations contained therein, accord the plaintiff the benefit of every favorable inference and determine only whether the facts alleged fit within any cognizable legal theory. (Virgem Enters. v City of New York, 290 AD2d 708 [3d Dept 2002].) A cause of action for breach of the duty of fair representation must be predicated upon actions which are arbitrary, discriminatory or undertaken in bad faith. (Ahrens v New York State Pub. Empls. Fedn., 203 AD2d 796 [3d Dept 1994].) Mere negligence or mistake on the part of a union does not rise to the level of a breach of the duty of fair representation. (Id.; see Altamari v Parker, 189 AD2d 982, 984.) The complaint must allege the type of “invidious, hostile treatment” or perfunctory handling of a grievance to state a claim for breach of the duty of fair representation. (See Smith v Sipe, 109 AD2d 1034, 1037 [3d Dept 1985, Mahoney, P.J., dissenting op], revd on dissenting mem below 67 NY2d 928.)
*327 The complaint sets forth specific facts and theories regarding the ways in which representative Slywiak was negligent in negotiating plaintiffs grievance, citing representative Slywiak’s failure to raise allegedly meritorious arguments and his unwillingness to allow plaintiff to retain independent counsel as the major flaws in his representation. The only indication of any conduct by representative Slywiak amounting to more than negligence is plaintiffs assertion that he believed representative Slywiak was “actively working with management officials” from the School District to the detriment of his representation of plaintiff. Plaintiff fails, however, to provide any evidence supporting this claim or any other proof tending to support a claim of “invidious, hostile treatment” by defendant NYSUT through the actions of representative Slywiak. Accordingly, the complaint must be dismissed as pertains to defendant NYSUT.
Causes of Action Pertaining to Defendants Local Union, McCarty and Carrigan
Defendants’ motion to dismiss the several causes of action against the Local Union and defendants McCarty and Carri-gan, individually, must also be granted.
Initially, the complaint fails to state specific facts sufficient to support a cause of action under the Labor and Management Improper Practices Act. (People v Schepis, 206 AD2d 278 [1st Dept 1994], lv granted 84 NY2d 910, appeal dismissed 86 NY2d 856.) Further, no other causes of action against individual defendants McCarty and Carrigan are sustainable because all of the acts attributed to them in the complaint occurred within the scope of their activities as union members. Union officers and employees are not individually liable to third parties for acts performed as representatives of the union. (Covello v Depository Trust Co., Local 153, 88 F Supp 2d 59, 61 [ED NY 2000].)
The only remaining claim available to plaintiff is that defendant Local Union breached its duty of fair representation to him by the actions of defendants McCarty and Carrigan. It is a long-standing principle that an action against a labor union may be maintained only where the claim is provable against each and every member of the association. (Mounteer v Bayly, 86 AD2d 942 [3d Dept 1982]; see Martin v Curran, 303 NY 276 [1951].) Thus, liability for individual acts may only be conferred on a union where the union membership has ratified the acts of the individuals. (Walsh v Torres-Lynch, 266 AD2d 817 [4th Dept 1999]; see Saint v Pope, 12 AD2d 168 [4th Dept 1961].) *328 Such is the case regardless of whether the theory of liability is intentional tort or breach of the duty of fair representation. (Walsh v Torres-Lynch, supra at 818.)
Plaintiffs contention that defendant Local Union has ratified the acts of defendants Carrigan and McCarty by choosing to afford them representation in this action is unavailing. Even if representation of defendants Carrigan and McCarty could somehow be deemed an endorsement of their alleged conduct, plaintiff has produced no evidence that each and every member of defendant Local Union approved such representation. Plaintiffs request for a new exception to the rule announced in Martin v Curran (supra) is likewise unpersuasive. Accordingly, defendants’ motion to dismiss the causes of action against defendant Local Union is granted.
Conclusion
For the reasons set forth herein, defendants’ motion to dismiss the complaint is granted and plaintiffs cross motions to amend the complaint and for an order prohibiting attorney Bilik from representing all defendants in this matter is denied.

. In the absence of the proposed “just cause” provision, plaintiff was an employee at will who could be discharged without a reason from the School District.

. Plaintiff has not named representative Slywiak individually as a party to his claim. As such, the question of his liability for alleged negligence in handling plaintiff’s grievance is not addressed herein.